CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 2 2 2008

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LAWRENCE D. WOLFE,<br>    Plaintiff, | )<br>)<br>) |
| v. | )   Civil Action No. 7:07cv0063<br>)<br>) |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY<br>    Defendant. | )   By:  Hon. Michael F. Urbanski<br>)          United States Magistrate Judge<br>)<br>) |

## MEMORANDUM OPINION

Plaintiff Lawrence D. Wolfe ("Wolfe") brought this action for review of the Commissioner of Social Security's ("Commissioner") final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383 ("Act").

The parties consented to the court's jurisdiction on March 5, 2007, and the case is pending on cross motions for summary judgment. Following the filing of the administrative record and briefing, oral argument was held on December 4, 2007. Having reviewed the record, and after briefing and oral argument, the decision of the Administrative Law Judge ("ALJ") must be affirmed.

### I.

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when,

considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## II.

Wolfe was born on January 1, 1971 and is a high school graduate. (Administrative Record [hereinafter "R."] 21) Wolfe's previous work includes a fork lift operator, maintenance man, metal shop laborer, gas station attendant, and surveying lineman. (R. 65) Wolfe filed an application for a period of disability, disability insurance benefits, and supplemental security income on August 30, 2004. (R. 14) Wolfe's application alleges a disability onset date of July 20, 2004 due to diabetes, lower back pain, and obesity. (R. 17, 103) At the time of the alleged onset, Boyd was only thirty-three years old, and is considered a "younger person" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c). Wolfe's claim was initially denied on October 18, 2004 and upon reconsideration on January 11, 2005. (R. 14) An ALJ held an administrative hearing by video teleconference in this matter on November 21, 2005. (R. 201-241), and issued a decision on April 27, 2006 finding Wolfe not disabled. (R. 12-18) The Appeals Council denied Wolfe's request for review on December 15, 2006, rendering the decision final. (R. 5-7)

Wolfe argues that the ALJ's decision is not supported by substantial evidence and must be reversed for four reasons. First, Wolfe alleges that the ALJ disregarded the opinion of his primary treating physician, John W. Lewis, Jr., D.O. Second, Wolfe alleges that the ALJ improperly disregarded the testimony of Wolfe and his family. Third, Wolfe claims that the ALJ failed to take into account Wolfe's non-exertional limitations in crafting a hypothetical to the Vocational Expert ("VE"). Fourth, Wolfe asserts that the ALJ erroneously concluded that Wolfe was not disabled because he refused to comply with prescribed medical treatment. After reviewing the administrative transcript, considering the briefs and oral argument, and applying the standard of review in social security disability appeals, the court concludes that the decision of the Commissioner must be affirmed as it is supported by substantial evidence reflected in the treatment records of Wolfe's treating neurosurgeon and orthopedic surgeon.

### III.

The court finds that the ALJ properly explained why he declined to follow the opinion of Dr. Lewis, Wolfe's treating primary care physician, that he was disabled. Wolfe argues that because Dr. Lewis is Wolfe's treating physician, his opinion should have been afforded controlling weight. Additionally, Wolfe argues that the ALJ failed to adequately explain why he declined to follow Dr. Lewis' opinion.

The ALJ is required to analyze every medical opinion received and determine the weight to give to such an opinion before making a disability determination. 20 C.F.R. § 404.1527(d). A treating physician's opinion is to be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other

3

substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); 20 C.F.R. § 404.1527 (d)(2); Social Security Ruling 96-2p.

The ALJ is to consider a number of factors which include whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. § 404.1527. A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," and the ALJ must provide his reasons for giving a treating physician's opinion certain weight or explain why he discounted a physician's opinion. Mastro, 270 F.3d at 178; 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."). Here, the ALJ adequately addressed the opinion of Dr. Lewis and properly explained why he decided not to follow Dr. Lewis' opinion.

Dr. Lewis has been Wolfe's treating primary care physician since April 11, 2002 and has seen him on numerous occasions since that time. (R. 183) On November 7, 2005 Dr. Lewis wrote a letter to Wolfe's counsel stating that Wolfe is "totally and permanently disabled," due to Wolfe's back pain and lumbar disc disease. (R. 183) Based on a July 12, 2005 MRI, Dr. Lewis found that Wolfe has a "far posterior left lateral L3-4 disk protrusion, with nerve root compression in the left lateral recess and neuroforamen." (R. 170-71, 183) Wolfe also has

"moderate broad posterior central in left L4-5 disk protrusion, creating nerve root impingements." (R. 183)

Despite the nature and length of the treating relationship between Dr. Lewis and Wolfe, the ALJ accorded little weight to Dr. Lewis' opinion that Wolfe was disabled. Instead, the ALJ relied on the opinions of Wolfe's treating orthopedic specialist Gregory D. Riebel, M.D., and neurosurgeon James M. Leipzig, M.D., to support the administrative decision.

Dr. Riebel, a treating orthopedic surgeon, opined that Wolfe would benefit greatly from physical therapy. Wolfe, however, never pursued this option. Nor did he follow the treatment recommendations of his neurosurgeon, Dr. Leipzig, instead resigning himself to applying for disability. Neither treating specialist opined that Wolfe was completely disabled as did Dr. Lewis, and the treatment records from these treating specialists, coupled with the reviewing state agency physicians' opinions, is more than a sufficient basis for the ALJ to decline to follow Dr. Lewis' opinion. As such, the ALJ did not commit error in according little weight to the opinion of Dr. Lewis.

On June 7, 2004, Dr. Leipzig saw Wolfe on a referral from Dr. Lewis. Dr. Leipzig evaluated Wolfe's lower back pain and suggested that Wolfe pursue conservative treatment options, such as physical therapy. (R. 111) Wolfe was referred to Alleghany Regional Hospital for physical therapy per Dr. Leipzig's suggestion. (R. 111) On June 14, 2004, Wolfe attended his first physical therapy session. (R. 115) At the time, Wolfe was "moderately overweight," (R.112), weighing 300 pounds. (R. 110) The notes from this session indicate that Wolfe believed his pain to range only from zero to three on a ten point scale. (R. 115) Wolfe had five physical therapy appointments scheduled beyond the initial intake visit and he either did not

5

Case 7:07-cv-00063-mfu   Document 17   Filed 01/22/08   Page 5 of 11   Pageid#: 81

attend or cancelled all succeeding appointments. (R. 116) During a visit on October 14, 2004, Dr. Lewis noted that Wolfe only went to one session of physical therapy because Wolfe felt like it would "like to have killed me." (R. 141) Furthermore, on June 10, 2005, in a letter to Dr. Harron, a neurologist, Dr. Lewis wrote that Wolfe had "not performed much physical therapy, even though I requested him to do so. He does not seem to think it will help, although he has not tried." (R. 185) Dr. Leipzeg opined that physical therapy would help Wolfe's back pain, but Wolfe chose not to follow that advice. Wolfe's failure to follow Dr. Leipzig's recommended treatment undercuts Dr. Lewis' opinion that Wolfe is completely and totally disabled.

Dr. Lewis then referred Wolfe to Dr. Riebel, an orthopedic surgeon, for a surgical consult because Dr. Lewis was "not sure how else to proceed." (R. 184) Dr. Riebel saw Wolfe on September 13, 2005, about two months before the administrative hearing. (R. 174-76) After examining Wolfe and reviewing his July 12, 2005 MRI, Dr. Riebel suggested surgical disc decompression to alleviate his pain. (R. 175) This suggestion was made on the assumption that Wolfe had exhausted conservative treatment options, including physical therapy, without success. As with Leipzig's recommended course of treatment, Wolfe chose not to follow Dr. Riebel's suggestion of disc decompression surgery. (R. 174) As to disability, Dr. Riebel stated that he could not "support a claim for disability at this time," because he thinks Wolfe "would be a lot better if he had surgery done." (R. 175)

Commenting on Dr. Riebel's surgical recommendation, Dr. Lewis later opined in a letter to Wolfe's counsel that Wolfe was "not a great surgical candidate" due to his weight, hypertension, and diabetes. (R. 183) Wolfe argues that the ALJ placed undue reliance on the recommendation of Dr. Riebel that Wolfe undergo back surgery, especially given Dr. Lewis'

6

view that Wolfe is not a good surgical candidate. While Drs. Riebel and Lewis disagree as to whether Wolfe's overall health would allow surgery, the ALJ certainly could consider the fact that Wolfe chose not to follow the advice of both his treating neurosurgeon and his treating orthopedic surgeon as to what he could do to improve the condition of his back.

In addition to the information contained in the treatment notes of Drs. Leipzig and Riebel, the ALJ relied upon the opinions of the state agency reviewing physicians, Drs. Hays and Hartman, who opined on October 13, 2004 that Wolfe could perform sedentary work.[1] (R. 136) Upon review of all the medical evidence in the record, including the MRI from May 20, 2004, the state reviewing physicians found that Wolfe could occasionally lift and/or carry 20 pounds, frequently lift/and or carry 10 pounds, stand and/or walk at least 2 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and would be limited in pushing and/or pulling in his lower extremities. (R. 132) As a result of these limitations, Drs. Hays and Hartman both concluded that Wolfe could perform work at the sedentary exertional level.

Wolfe argues that the opinions of these state agency physicians should be disregarded as their review of Wolfe's medical records was performed a year prior to the administrative hearing, during which time Wolfe's condition deteriorated significantly. The problem with this argument, however, is that the clinical evidence does not support a credible claim of deterioration in Wolfe's condition. Indeed, the lumbar MRI dated July 12, 2005 indicates that

---

[1] Sedentary works requires exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM

there was no "change in appearance of [the] lumbar spine since" an earlier May 20, 2004 MRI that was included in the records when reviewed by the state agency physicians. (R. 170) Therefore, the Court finds that the ALJ's reliance on the opinions of Drs. Hays and Hartman, coupled with the information contained in the medical records of Drs. Leipzig and Riebel, to more than amply offset the opinion of Dr. Lewis.

## IV.

Wolfe also argues that the ALJ committed error by disregarding the testimony of Wolfe and his family. At the administrative hearing, Wolfe, his mother and father all testified to Wolfe's condition. The ALJ, after considering the evidence, determined that Wolfe's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [Wolfe's] statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (R. 19) Furthermore, the ALJ found "that [Wolfe] and his witnesses have exaggerated his limitations and therefore, can only partially credit the claimant's complaints." (R. 20).

An ALJ is required to analyze and consider a claimant's subjective complaints of pain to the extent that such complaints are not inconsistent with the medical evidence of record. <u>Craig v. Chater</u>, 76 F.3d 585, 592 (4th Cir. 1996) (a claimant's subjective allegations of pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."). Claimants are instructed that the Commissioner:

> will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your

> statements in relation to the objective medical evidence and other
> evidence, in reaching a conclusion as to whether you are disabled.
> We will consider whether there are any inconsistencies in the
> evidence and the extent to which there are any conflicts between
> your statements and the rest of the evidence, including your
> history, the signs and laboratory findings, and statements by your
> treating or non-treating source or other persons about how your
> symptoms affect you. Your symptoms, including pain, will be
> determined to diminish your capacity for basic work activities (or,
> if you are a child, your functioning) to the extent that your alleged
> functional limitations and restrictions due to symptoms, such as
> pain, can reasonably be accepted as consistent with the objective
> medical evidence and other evidence.

20 C.F.R. §§ 416.929(c)(4). Credibility determinations are in the province of the ALJ, and courts normally ought not to interfere with those determinations. See Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989). Here, the ALJ provides a detailed explanation as to why he discredited the testimony of Wolfe and his parents in relation to the medical evidence, (R. 18-20), and the Court finds that substantial evidence supports the ALJ's decision.

Wolfe and his parents' testimony indicate that Wolfe is nearly an invalid and restricted to either his bed or a recliner. The ALJ, however, found no evidence in the medical records that provides evidence of such an extreme level of disability. (R. 19) In fact, the initial intake notes from Wolfe's physical therapy reveal that Wolfe has no problem ambulating. (R. 112) Wolfe argues that there are numerous instances in the medical records that confirm his confinement to bed, the recliner, or home. (R. 122, 147, 172, 196). In contrast to Wolfe's subjective complaints, however, nowhere in the record do any of the numerous medical professionals who have seen and treated Wolfe call for him to remain bedridden or be confined to a recliner. As such, the ALJ's decision as to the credibility of the testimony from Wolfe and his parents is supported by substantial evidence.

In a similar vein, Wolfe argues that the ALJ failed to consider Wolfe's pain as a non-exertional impairment in crafting a hypothetical question to ask the vocational expert ("VE"), thereby undermining the testimony by the VE. To be sure, the ALJ asked the VE a hypothetical that included Wolfe's subjective complaints as to pain, giving full credit to the testimony of Wolfe and his parents. (R. 240) The VE testified that given that testimony there would be no work that Wolfe could perform. (R. 240) As noted above, however, the ALJ properly declined to fully credit the testimony of Wolfe and his parents as to his subjective complaints of pain.

## V.

For the foregoing reasons, the court concludes that given the standard required for review of the Commissioner's administrative decision, this case must be affirmed. The ALJ's decision not to give Dr. Lewis' opinion controlling weight is consistent with the regulations because there is significant medical evidence to contradict his opinion, particularly the records of Wolfe's treating neurosurgeon and orthopedic surgeon and Wolfe's failure to follow their treatment recommendations. Furthermore, the ALJ was well within his discretion in determining the credibility of the testimony of Wolfe and his parents as to his subjective complaints of pain given the contrast between his complaints and treatment records. Additionally, because the ALJ found such testimony to be not credible, his reliance on testimony from the VE that jobs exist in significant numbers in the national economy that Wolfe could perform is proper. As the ALJ's decision is plainly supported by substantial evidence, Wolfe's motion for summary judgment must be denied and the Commissioner's motion for summary judgment granted.

In affirming the final decision of the Commissioner, the court does not suggest that Wolfe is totally free of all pain and subjective discomfort. The objective medical record simply

10

fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the evidence in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Defendant's motion for summary judgment must be granted.

The Clerk of Court hereby is directed to send a copy of the Memorandum Opinion and accompanying Order to all counsel of record.

**ENTER:** This 22nd day of January, 2008.

Michael F. Urbanski
United States Magistrate Judge

11

Case 7:07-cv-00063-mfu   Document 17   Filed 01/22/08   Page 11 of 11   Pageid#: 87